JOURNAL ENTRY and OPINION
Appellant David Chase, as administrator of the estate of Matthew Chase, appeals the trial court's judgment in favor of appellees Brooklyn City School District ("Brooklyn") and Medina Tractor Supply Company ("Medina Tractor") in his action for employer intentional tort, violation of the Ohio Products Liability Act, and various other torts. Chase assigns the following three errors for our review:
 I. THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, MEDINA TRACTOR SALES COMPANY, UPON ALL CLAIMS.
 II. THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING DEFENDANT-APPELLEE BROOKLYN CITY SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFF-APPELLANT'S EMPLOYER INTENTIONAL TORT CLAIM.
 III. THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY DENYING PLAINTIFF-APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AGAINST DEFENDANT-APPELLEE, BROOKLYN CITY SCHOOL DISTRICT.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
David Chase brings this appeal after the trial court granted Brooklyn's motion to dismiss, denied Chase's request for summary judgment as to liability, and granted Medina's summary judgment.
On July 22, 1997, twenty-year-old Matthew Chase was fatally injured when a tractor he was operating overturned, crushing him. Chase was a summer employee of Brooklyn, and was using the Ford Model 3400 tractor to remove dirt from a pile located on District property. Matthew's father, David Chase, filed suit as administrator of Matthew's estate against Brooklyn and Medina Tractor, which sold the tractor to Brooklyn. Chase set forth an employer intentional tort claim against Brooklyn as well as negligence and strict liability claims against Medina Tractor.
Brooklyn filed a motion to dismiss Chase's claims against Brooklyn arguing that it was immune from liability under R.C. 2744. Brooklyn further argued that Chase failed to allege sufficient facts to set forth an employer intentional tort action. Specifically, Brooklyn argued Chase failed to allege sufficient facts to demonstrate that Brooklyn deliberately acted to cause the specific harm to Matthew, that Brooklyn specifically desired to injure Matthew, or the Brooklyn knew that Matthew's injury was certain or substantially certain to result from their actions. They also argued that Chase failed to show that Matthew had not operated the tractor before or that Matthew or anyone else told the District Matthew was inadequately trained to operate the tractor.
In response to the motion to dismiss, Chase argued that R.C. 2744's governmental immunity does not shield Brooklyn from civil liability for injuries caused by employer intentional tort. Chase also argued that R.C. 2744 violates equal protection by shielding political subdivisions from civil tort liability for employer intentional torts while permitting actions against political subdivisions for sexual harassment and other intentional torts committed in the workplace. Chase argued that Brooklyn knew the tractor was dangerous because it was not equipped with rollover protection structure (ROPS), a seat belt or functioning brakes. Chase also argued that Brooklyn's failure to provide Matthew with head protection, proper training, or supervision while allowing him to operate the tractor constituted disregard of a known risk under circumstances where harm to Matthew was certain or substantially certain to occur, thereby rendering Brooklyn liable for an employer intentional tort. Chase also argued that R.C. 2744.09 immunity does not apply to civil liability for a workplace accident caused by an employer intentional tort. Chase filed a motion for partial summary judgment on the issue of liability only as against Brooklyn, arguing that the district knew that assigning an untrained and unsupervised employee to a front end loader without ROPS, and a seat belt was a dangerous task or process. Chase also argued that Brooklyn knew an accident was substantially certain to occur, but despite such knowledge, required Matthew to engage in the dangerous task of removing dirt from the pile.
Brooklyn opposed Chase's motion for partial summary judgment and filed its own motion for summary judgment. It argued that it had no knowledge the tractor could tip over when used for the assigned task. Brooklyn argued that it had never had any reports of safety problems with the tractor, it had never used the tractor on hills before, other Brooklyn employees had safely used the tractor on the same hill in the days before Matthew's accident, it knew of no complaints of safety concerns regarding the lack of rollover protection, that safety equipment was available to anyone who requested it, and it had no knowledge of brake problems with the tractor.
In support of its motion for summary judgment, Brooklyn repeated its claim of immunity under R.C. 2744, arguing that none of the statutory exceptions to immunity applied. Brooklyn also claimed that, pursuant toVentura v. City of Independence (May 7, 1998), Cuyahoga App. No. 72526, unreported and Ellithorp v. Barberton City School District (July 9, 1997), Summit App. No. 18029, unreported, no cause of action for employer intentional tort exists for work-related injuries.
In opposition, Chase argued that Brooklyn had prior actual knowledge of the exact dangers leading to Matthew's death. Citing deposition testimony of Matthew's supervisor, Robert Marquard, Chase asserted that Brooklyn knew that using the tractor to scrape dirt from the top of the mound was dangerous, Matthew was required to ride the tractor up and onto the apron of the mound, it was impossible to keep the tractor on a flat surface while reaching the dirt on top of the mound, ROPS and a seatbelt were required, personal protective equipment such as a helmet was required, and daily safety inspection of vehicles including the tractor was required.
Chase argued that Ventura and Ellithorp were wrongly decided and that employer intentional tort claims necessarily arise out of the employment relationship. However, the trial court granted Brooklyn's motion to dismiss, concluding that pursuant to Ventura, Brooklyn was immune from liability under R.C. 2744.
Medina Tractor also filed a motion for summary judgment, arguing that the tractor was built in 1967 and, as manufactured, did not have ROPS. Medina Tractor argued that the prevailing standards of the industry at that time did not require a tractor to have ROPS. Medina Tractor argued that, although the Occupational Safety and Health Administration instituted a rule in 1976 requiring employers to equip tractors used by employees with rollover protection, the regulation excluded tractors manufactured before July 1, 1969. In 1985, the American Society of Agricultural Engineers instituted a requirement that all new tractors be sold with rollover protection. However, the regulation did not requireexisting tractors to be retrofitted with ROPS.
Although Medina Tractor salesman Ward Schray could not specifically recall whether he told anyone at Brooklyn about the availability of ROPS at the time the tractor in question was sold, he stated that it was his standard practice to recommend ROPS.
Medina Tractor also argued that it could not be held strictly liable for Matthew's injuries because it was not a manufacturer, but was, at most, a supplier whose liability is limited by R.C. 2307.78 to instances of negligence and misrepresentation Medina Tractor further argued that it had no duty to retrofit the tractor with ROPS, that it had no duty to warn because the tractor was not defective as originally sold and because the absence of ROPS and the danger of tip-over was open and obvious. They also alleged that Chase did not show that any failure to warn caused the accident or that the tractor failed to conform to any representations made by Medina Tractor.
In opposition, Chase argued that Medina Tractor was an authorized Ford dealer and is strictly liable as the manufacturer of a defective tractor. Chase argued that a seller of used equipment can be subject to strict product liability if it failed to maintain the product after it came into possession of and before it left the possession of the supplier and the alteration, modification, or failure to maintain the product made it defective. Chase further argued that, in 1982, Ford instructed its dealers to warn users regarding lack of ROPS or to issue safety instructions or warnings before selling used tractors.
Because Brooklyn's Joseph Fleming testified he could not remember if Brooklyn was informed about the need to install ROPS, Medina Tractor argued there was no proof that it did not warn Brooklyn of the availability of ROPS.
Medina Tractor also argued that the Ford documents relied upon by Chase only demonstrated that Medina Tractor knew about ROPS and that Ford suggested to dealers various methods to promote ROPS and to memorialize purchasers' refusal to purchase such systems. Medina further argued that it was not a manufacturer and that it had no duty to retrofit the tractor with a ROPS.
Chase countered by arguing that a possible oral discussion about ROPS is irrelevant, that warnings must be communicated to the actual user of the product, and that the dangers of the tractor were never told to Matthew. Chase argued that Medina Tractor had an independent stream of commerce. Chase also argued that whether Medina Tractor is a manufacturer under R.C. 2307.78(B)(6) is an issue of fact.
The trial court granted summary judgment in favor of Brooklyn, concluding that R.C. 2307.78(B)(6) does not require a supplier to make improvements on a product, but only that the product is kept in good condition. The court noted that the tractor met the applicable safety requirements at the time it was manufactured. The court also concluded that, even if there was a duty to retrofit the tractor, the duty arises or is breached only when the product was defective when sold. The trial court also concluded that Medina Tractor had no duty to warn of dangerous propensities of a product that is open and obvious to the user. This appeal followed.
In its first assignment of error, Chase argues that the trial court erred by granting summary judgment in favor of Medina Tractor Company. Chase argues that genuine issues of fact existed as to whether Medina Tractor failed to adequately warn tractor users of the danger of operating a tractor with ROPS or a seatbelt, whether the dangers of operating the tractor were open and obvious to Matthew, whether Medina Tractor breached an independent duty to Matthew by placing a defective tractor back into the stream of commerce, and whether Medina Tractor can be deemed a "manufacturer" of the tractor under R.C. 2307.78(B)(6).
In order to assess what duty, if any, was owed to Matthew by Medina Tractor, we must first resolve the issue of whether Medina Tractor was a "manufacturer" of the tractor as that term is defined by R.C. 2307.71. R.C. 2307.71(I) defines manufacturer as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." It is undisputed that the tractor was not designed, formulated, produced, created, made constructed, assembled or rebuilt by Medina Tractor. The evidence revealed that Medina Tractor resold the truck to Brooklyn in 1986. While conceding that Medina Tractor did not produce the tractor, Chase argues that Medina Tractor is liable as if it were a manufacturer under R.C.2307.78(B). which provides:
 A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code and any of the following applies: * * * (6) the supplier in question altered, modified, or failed to maintain that product after it came into the possession of, and before it left the possession of, the supplier in question, and the alteration, modification, or failure to maintain that product rendered it defective.
Accordingly, in order to prove his product liability claim against Medina Tractor, Chase had to prove that Medina Tractor, as a supplier, altered, modified, or failed to maintain the tractor, thereby rendering it defective.
As an exhibit to its motion for summary judgment, Medina Tractor attached a report from Professional Engineer, Bobby Clary of Wayne Engineering Services, Ltd. He reported that, in 1976, the Occupational Health and Safety Administration (OSHA) instituted a regulation requiring employers "equip all tractors, except those manufactured prior to July1, 1969, that were used by their employees with ROPS." (Emphasis added.) He noted that dealers had problems getting users of tractors to purchase and use ROPS because the rear axle-attached ROPS would render the tractor incompatible with many implements that existed on farms across the United States. Purchasing a tractor equipped with ROPS would require farmers to discard many usable implements and replace them with new implements that served the same purpose. Clary also wrote that, in 1985, the American Society of Agricultural Engineers (ASAE) instituted a regulation requiring, except for limited exceptions, all new tractors be sold with ROPS. According to Clary, "this standard recognized that some incompatibilities continued to exist and allow the purchaser to declare such incompatibility and receive credit for the ROPS in his tractor purchase." Clary issued, inter alia, the following opinions: (1) the Ford Model 3400 tractor was not defective or unreasonably dangerous as designed, manufactured, and sold. Its benefits exceed the risks associated with its use; (2) ROPS technology had not been developed at the time the tractor and loader were manufactured; (3) the front end loader attached to the tractor at the time of Matthew's accident was not compatible with the use of ROPS because it attached to the tractor axle housing at the same place as would the ROPS frame; (4) because the tractor was not dangerous as sold, there was no duty to modify or retrofit its design at the time of its 1986 resale.
In response to Medina's motion for summary judgment, Chase attached a report from Professional Engineer James Suhr who opined that the loader had been modified since its original manufacture by the addition of a metal angle iron that was welded to the back center of the loader bucket. Suhr opined that the angle iron struck Matthew as the tractor and loader overturned. Suhr also opined that by 1986, the dangers of tractor rollover accidents were well known. He added that, because injury or death from rollover could be avoided either by preventing the rollover or preventing operator injury during a rollover, Medina Tractor had the duty to inform their customers about ROPS, and to retrofit used equipment with safety equipment as it became available. Suhr also opined that by selling the tractor in 1986 without ROPS or an owner's manual, Brooklyn breached its duty as an equipment dealer not to place an unreasonably dangerous and defective piece of equipment into service and that Brooklyn proximately caused Matthew's death.
Construing this evidence most strongly in favor of Chase as the non-movant, we conclude that it establishes only that the advantages of ROPS technology were widely recognized at the time the tractor was sold in 1986. However, it does not establish that Medina Tractor's failure to equip this particular tractor with ROPS technology constituted a failure to maintain the tractor that rendered it defective.
Chase argues that Medina Tractor failed to maintain the tractor by failing to comply with safety instructions issued by Ford. Chase points to several documents issued by Ford and distributed to its North American dealers. In a General Sales Letter dated May 7, 1985, Ford's General Sales Manager John Johnson wrote: "[S]ales of tractors without ROPS should be avoided if at all possible. Further, if an injury should occur due to lack of ROPS on a tractor, the selling dealer could become involved in a lawsuit. It makes sense, therefore, for a dealer to adopt a policy to not sell any tractors without ROPS." Also, in a General Sales Letter dated July 29, 1982, Johnson wrote: "In order to increase customer awareness of safety practices, dealers are asked to take the following actions: provide an Operator's Manual for all NEW and USED tractors and equipment sold retail"; "encourage customers to purchase and install safety cabs or ROPS with seat belts"; "installation of a ROPS is recommended on all tractors with a front end loader," "make sure all NEW and USED tractors have the proper safety decals installed."
Chase argues that these General Sales Letters constituted safety instructions from Ford that Medina Tractor had a duty to comply with. However, our review of the General Sales Letters reveals that the instructions contained therein were more advisory than mandatory. While the letters indicated growing acceptance and appreciation of the significance of ROPS technology, they stopped far short of mandating that all tractors be retrofitted with ROPS systems. Furthermore, Chase failed to present any statute that imposed a duty upon Medina Tractor to install a ROPS system on the tractor. Accordingly, Chase has not established that Medina Tractor failed to properly maintain the tractor.
Absent proof of a failure to maintain the tractor, Medina Tractor cannot be held liable as a manufacturer. Consequently, Medina Tractor's liability, if any, must be determined under R.C. 2307.78(A) which sets forth the liability of suppliers for product liability claims. R.C.2307.71(O)(1) defines "supplier" as "a person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce." R.C. 2307.78 provides:
 [A] supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that either of the following applies: (1) the supplier in question was negligent and that negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages; (2) the product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages. A supplier is subject to liability for such a representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.
In order to maintain his product liability action against Medina Tractor as a supplier of the tractor, Chase had to prove that Matthew's injuries were proximately caused by Medina Tractor's negligence or that the tractor failed to conform to Medina Tractor's representations at the time it was sold and that such failure to conform proximately caused Matthew's accident. See Groot v. G.E. (Feb. 2, 2000), Summit App. No. 19591, unreported. The lack of a proper warning accompanying a latently dangerous product is a form of negligence. Roberts v. George V.Hamilton, Inc. (June 30, 2000), Jefferson App. No. 99 JE 26, unreported, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 325,364 N.E.2d 267, 273.
Chase argues that Medina Tractor acted negligently by failing to warn Brooklyn of the dangers of operating the tractor without rollover protection. However, a supplier has no duty to warn of dangers that are open and obvious to the user. Livengood v. ABS Contractors Supply (1998),126 Ohio App.3d 464, 710 N.E.2d 770, at syllabus.
In this case, the evidence reveals that Mathhew's employer knew of the dangers of operating a tractor without rollover protection. In his deposition, Robert Marquard stated that he first learned of ROPS sometime in the 1980's. He admitted knowing that the purpose of a ROPS is to provide operator safety. He added that he was not concerned that the tractor in question lacked rollover protection even though he knew it could flip over on a hill. Marquard added that he had operated front-end loaders on large, steep hills in the past without ever tipping over and without any near-misses. Fleming also admitted that he was aware that a ROPS was designed to protect the operator in case the machine turned over. He also stated that rollover protection was not a concern when he examined the tractor nor did it later become a concern.
Also, there is no evidence that Medina Tractor made any misrepresentations about the use of the tractor. Brooklyn's Joseph Fleming said he could not recall any advice given to him by anyone at Medina Tractor about what would be appropriate uses of the tractor. Under the circumstances, we conclude that Chase failed in his burden of establishing a genuine issue of fact as to whether Medina Tractor made any material misrepresentations with respect to the tractor. Accordingly, Chase failed to establish either of the bases for imposition of supplier liability, and summary judgment was properly granted in favor of Medina Tractor on Chase's products liability claim.
In his second and third assignments of error, Chase argues the trial court erred in granting Brooklyn's motion to dismiss Chase's employer intentional tort claim and in denying his motion for partial summary judgment on the issue of liability against Brooklyn. Chase argues that R.C. 2744 immunity does to apply to relieve Brooklyn from civil liability for injuries resulting from an employer intentional tort.
In Ventura v. City of Independence (May 7, 1998), Cuyahoga App. No. 72526, unreported, this court upheld the lower court's grant of summary judgment on behalf of the City of Independence in an action for intentional tort and intentional infliction of emotional distress brought by a former city worker. Citing Ellithorp v. Barberton City SchoolDistrict Board of Education (July 9, 1997), Summit App. No. 18029, unreported, we held that R.C. 2744.09(B) does not create an exception to the immunity granted to political subdivisions by R.C. 2744.02(A)(1).
 [T]he court in Ellithorp v. Barberton City School District Board of Education, 1997 Ohio App. LEXIS 3053 (July 9, 1997), Summit App. No. 18029, unreported, recently stated as follows: Because Section 2744.02(B) includes no specific exceptions for intentional torts, courts have consistently held that political subdivisions are immune from intentional tort claims. See, e.g., Wilson [v. Stark Cty. Dept. of Human Services (1994), 70 Ohio St.3d 450, 639 N.E.2d 105] (claims for fraud and intentional infliction of emotional distress); Farra v. Dayton
(1989), 62 Ohio App.3d 487, 576 N.E.2d 807 (claim for intentional interference with business interests); Monesky v. Wadsworth (Apr. 3, 1996), 1996 Ohio App. LEXIS 1402, Medina App. No. 2478-M, unreported (claims for trespass and demolition of a building). * * * [Section 2744.09(B) of the Ohio Revised Code] provides that Chapter 2744 immunity does not apply to civil actions brought by an employee against a political subdivision "relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]" The school board has asserted, and this Court agrees, that Section 2744.09(B) is inapplicable to the facts of this case. An employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside of the scope of employment. Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus.
Ventura, citing Nungester v. Cincinnati (1995), 100 Ohio App.3d 561 at 567, 654 N.E.2d 423; Brannon v. Troutman, supra; Marsh v. Oney (Mar. 1, 1993), Butler App. No. CA92-09-165, unreported. See, also Abdalla v.Olexia (Oct. 6, 1999), Jefferson App. No. 97-JE-43, unreported;Nielsen-Mayer v. Cuyahoga Metro. Hous. Auth (Sept. 2, 1999), Cuyahoga App. No. 75969, unreported; Lyren v. Village of Wellington (Sept 1, 1999), Lorain App. No. 98CA007114, unreported.
Chase urges us to deviate from established precedent in which R.C. 2744 was determined to preclude a civil action against a political subdivision for damages resulting from work-related injuries. This, we decline to do. Accordingly, we overrule Chase's second and third assignments of error.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and ANNE L. KILBANE, J., CONCUR.