JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant David A. Chase ("appellant"), Administrator of the Estate of Matthew J. Chase ("Matthew"), deceased, appeals from the judgment of the trial court, which granted summary judgment in favor of Defendant-appellee Westfield Insurance Company ("Westfield"). For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On July 22, 1997, twenty-year old Matthew Chase was killed while working as a seasonal employee for the Brooklyn City School District, when a tractor he was operating overturned and crushed him. At the time of the accident, Matthew was operating a Ford 3400 tractor equipped with a front-end loader ("tractor"), removing dirt from a pile located on the school property.
 {¶ 3} Appellant, Matthew's father, filed a complaint on April 3, 2001 alleging Matthew's accident arose out of the ownership, maintenance, and/or use of an uninsured/underinsured ("UM/UIM") motor vehicle, i.e. the tractor.
 {¶ 4} At the time of Matthew's death, appellant was employed by Hilliard Electric. The complaint further alleged that Westfield Insurance Company ("Westfield") was the insurer of Hilliard Electric and that its employees, including the appellant and his family members, were insureds under a Commercial Insurance Coverage Policy ("policy") issued by Westfield. The policy was a motor vehicle liability policy pursuant to R.C. 3937.18, under which the appellant is entitled to UM/UIM motorist coverage by operation of law.
 {¶ 5} Appellant sued the school district for negligence and also filed a civil action against Medina Tractor Sales Company, the company that sold the tractor to the school district.[1] On August 12, 1999, the Cuyahoga County Court of Common Pleas dismissed the suit on the basis of immunity afforded to the school district, pursuant to R.C. 2744 and R.C. 4123.74. On October 29, 1999, the trial court granted summary judgment in favor of Medina Tractor Sales Company. On appeal, this court affirmed that judgment.[2]
 {¶ 6} Appellant's complaint alleged that, as a result of the above proceedings, no primary insurance existed to adequately compensate him for the damages caused by Matthew's death, and as a result, he is entitled to UM/UIM motorist coverage as an insured of Westfield.
 {¶ 7} The appellant moved for partial summary judgment, which was denied. Westfield moved for summary judgment, which the trial court granted on December 20, 2001. It is from this ruling that the appellant now appeals, asserting three assignments of error for our review.
 I. {¶ 8} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND DECLARED THAT PLAINTIFF-APPELLANT WAS NOT ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER R.C. 3937.18."
 II. {¶ 9} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN RULING THAT A TRACTOR DOES NOT CONSTITUTE A "MOTOR VEHICLE" UNDER R.C. 4511.01 (B), IRRESPECTIVE OF HOW THE VEHICLE WAS BEING USED AT THE TIME OF THE ACCIDENT."
 III. {¶ 10} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, WHEN IT DENIED APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DECLARED INSTEAD THAT APPELLANT WAS NOT ENTITLED TO UNDERINSURED MOTORIST COVERAGE."
 {¶ 11} We address together the appellant's interrelated assignments of error.
 {¶ 12} With regard to procedure, we note that this court reviews the lower court's grant of summary judgment de novo in accordance with the standards set forth in Civ.R. 56(C). North Coast Cable v. Hanneman
(1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875. In order for summary judgment to be properly rendered, it must be determined that:
 {¶ 13} "(1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267. See, also, State ex. rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639.
 {¶ 14} The burden of establishing that there are no genuine issues of material fact to be litigated is upon the party moving for summary judgment. Turner v. Turner (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. If the moving party meets this burden, the non-moving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. State ex. rel Zimmerman v.Tompkins, supra.
 {¶ 15} Former R.C. 3937.18 requires an insurer to offer UM/UIM coverage whenever an automobile or motor vehicle liability policy of insurance is issued. If UM/UIM coverage is not offered, it becomes part of the policy by operation of law. Abate v. Pioneer Mut. Cas. Co.
(1970), 22 Ohio St.2d 161, 258 N.E.2d 429, paragraphs one and two of the syllabus.
 {¶ 16} In the instant case, the dispute arises out of whether the tractor used by Matthew constitutes "other equipment used in construction work and not designed for or employed in general highway transportation" and is thus excepted from the definition of "motor vehicle," preventing recovery by the appellant under the UM/UIM motor vehicle liability policy issued by Westfield.
 {¶ 17} The Supreme Court of Ohio has held that the definition of "motor vehicle" as used in the version of R.C. 3937.18 in effect at the time the appellant entered into the insurance contract, is the definition found in R.C. 4511.01 (B). Delli Bovi v. Pacific Indem. Co. (1999),85 Ohio St.3d 343, 1999-Ohio-380; Metropolitan Property LiabilityIns. Co. v. Kott (1980), 62 Ohio St.2d 114, 115-116. R.C. 4511.01 (B) provides:
 {¶ 18} "`Motor vehicle' means every vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires, except motorized bicycles, road rollers, traction engines, power shovels, power cranes, and other equipment used in construction work and not designed for or employed in general highway transportation, hole-digging machinery, well-drilling machinery, ditch-digging machinery, farm machinery, trailers used to transport agricultural production materials between a local place of storage or supply and the farm when drawn or towed on a street or highway at a speed of twenty-five miles per hour or less, threshing machinery, hay-baling machinery, agricultural tractors and machinery used in the production of horticultural, floricultural, agricultural and vegetable products, and trailers designed and used exclusively to transport a boat between a place of storage and a marina, or in and around a marina, when drawn or towed on a street or highway for a distance of no more than ten miles and at a speed of twenty-five miles per hour or less." (Emphasis added.)
 {¶ 19} The appellant urges this court to employ a "use" standard in determining whether the tractor in this case is "other equipment used in construction work and not designed for or employed in general highway transportation," relying on the Supreme Court's holding in Muenchenbachv. Preble Cty. (2001), 91 Ohio St.3d 141, 2001-Ohio-244, 742 N.E.2d 1148. They contend that the statutory language compels the determination of whether the equipment was being used in construction at the time of theincident, in addition to whether the equipment was being used in general highway transportation at the time of the incident before such equipment must be excluded from the definition of "motor vehicle" under the statute. We disagree.
 {¶ 20} In Muenchenbach, the Ohio Supreme Court ruled that a tractor fitted with a street-sweeping brush on the front and a scraper blade on the back, constituted a motor vehicle, because at the time of the accident, the tractor was employed in general highway transportation. The Court employed a "use" standard in making this determination, citing to and adopting this court's reasoning in Putka v.Parma (1993), 90 Ohio App.3d 647, 630 N.E.2d 380. In that case, a woman was killed when she was struck by a backhoe at an intersection in Parma, Ohio. At the time of the accident, the backhoe was being driven from a service garage to a work site. The vehicle was otherwise used exclusively in construction and not designed to be operated on streets or highways. This court held that the backhoe was a motor vehicle and that it did not qualify as an exception under the statute reasoning that it was being operated on a public road like any other motor vehicle.
 {¶ 21} Neither this court in Putka, nor the Supreme Court inMuenchenbach, however, contemplated whether the equipment must be found to have been used in construction at the time of the incident in order to be excepted from the definition of motor vehicle and thus not subject to insurance coverage under a motor vehicle liability policy. Instead, both courts, in finding that the equipment was being used in general highway transportation at the time of the incident, held that neither vehicles qualified for the exception and therefore fit within the definition of motor vehicle. In Muenchenbach, the Court stated:
 {¶ 22} "* * * R.C. 4501.01 (B) and 4511.01(B) do not except construction equipment from the definition of `motor vehicle' on the basis of its principal use or dedicated purpose. They do not provide that construction equipment is excepted when used `principally,' `primarily,' or `generally for construction purposes, or in construction work. They do provide that, in order for other equipment used in construction work to be excepted, it must not be `employed in general highway transportation.' The term `general' is very clearly used to not to modify the term `employed,' but to modify `highway transportation.' We believe that if the General Assembly intended for construction equipment to be classified and excepted according to its principal, primary, or dedicated use, regardless of how used when it causes damage or injury, then it is incumbent upon the General Assembly to so provide." (Emphasis added.) Id. at 146.
 {¶ 23} The Supreme Court recognized that construction equipment is not excepted merely based on its principal use but will be excepted when used in general highway transportation. This indicates to us that the Supreme Court found it imperative to employ a "use" standard only with regard to whether the vehicle was being used in general highway transportation at the time of the incident.
 {¶ 24} Further, the legislative history supporting the enactment of R.C. 4501.01 (B) "manifests a purpose to regulate traffic upon roads and streets." Floch v. Farmers Ins. Group of Cos. (1994),97 Ohio App.3d 394, 646 N.E.2d 902 citing 1943 Ohio Atty.Gen.Ops. No. 6061 (construing G.C. 6290, the predecessor to R.C. Chapter 4501). The Floch court stated, "`motor vehicle' is circumscribed to those vehicles which operate upon roads and streets with the exclusion of vehicles which are `not designed for or employed in general highway transportation.'" Id. In this case, the vehicle that Matthew was operating was not employed in general highway transportation at the time of his death, rather, he was operating the vehicle on school property.
 {¶ 25} The appellant relies on his misinterpretation of the holding in Drake v. State Farm Ins. Co. (1998), 129 Ohio App.3d 781,719 N.E.2d 64. The appellant claims that Drake held "that a forklift constitutes a `motor vehicle' because the forklift was not used for `construction work' and it made no difference that it was `not designed for or employed in general highway transportation.'" (Appellant's brief p. 8). However, a careful reading of Drake reveals otherwise. In Drake, the court was faced with determining whether a forklift fit within any of the 14 exceptions to the definition of a motor vehicle. Neither party in that case claimed that the forklift constituted construction equipment, in fact, the court noted that the forklift was not suitable for construction. In that case, however, the appellee urged the court to interpret R.C. 4501.01 (B) to mean a motor vehicle means any vehicle except "other equipment not designed for or employed in general highway transportation." Id. at 787. In rejecting the appellee's argument, theDrake court held that the phrase "not designed for or employed in general highway transportation" as used in R.C. 4501.01 (B), modifies only "other equipment used in construction work" and does not create a separate category of exceptions. Drake did not involve a vehicle that could have qualified under the "other equipment used in construction" exception. Therefore, the appellant's contention that Drake supports his argument is incorrect.
 {¶ 26} In the case at hand, the appellant does not deny that the tractor is used in construction. Rather, he denies that it was being used in construction at the time of Matthew's death. However, the fact that Matthew may or may not have been using the tractor "in construction" at the time of the incident is not dispositive of whether the tractor falls within the exception to the definition of "motor vehicle." The important inquiry is whether the tractor was being used in general highway transportation. The evidence presented demonstrates at the time of his death, Matthew was not using the tractor in "general highway transportation." As such, the trial court did not err in granting summary judgment to Westfield.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J. CONCURS.
DIANE KARPINSKI, J., DISSENTS (SEE ATTACHED DISSENTING OPINION)
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] David A. Chase v. Brooklyn City School District, et al., Case No. 359722.
[2] Chase v. Brooklyn City Sch. Dist. (2001), 141 Ohio App.3d 9,749 N.E.2d 798.