OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Debra L. Zieber, appeals the April 16, 2008 decision of the Richland County Court of Common Pleas to grant Defendants-Appellees' Motions for Summary Judgment. The facts giving rise to this appeal are as follows.
 {¶ 2} Appellant has been a Deputy Clerk with the office of Richland County Treasurer Bart Hamilton since February 1998. Defendant-Appellee, Robin Heffelfinger is the Chief Deputy Clerk with the Richland County Auditor Pat Dropsey.
 {¶ 3} The Richland County Treasurer's Office and Auditor's Office share a database system. One of Appellant's responsibilities in the Treasurer's Office is the mailings. On May 18, 2006, Appellant had a discussion with an employee in the Auditor's Office concerning mailings issued from the database system. Appellant followed up the discussion with an email to the same Auditor's Office employee.
 {¶ 4} Later that day, Heffelfinger came to the Treasurer's Office to speak with Appellant concerning the email. Heffelfinger had Appellant's email and told Appellant that she wanted to speak privately with her in Mr. Hamilton's office regarding the email. Appellant voluntarily followed Heffelfinger into the empty office.
 {¶ 5} While Appellant and Heffelfinger were in the office, Heffelfinger stood with her back to the closed door and faced Appellant, who stood near the desk in the center of the room. The parties then engaged in a loud discussion regarding the email and the mailing system. The other employees working in the Treasurer's office that afternoon could hear the argument. After a few minutes, Appellant informed Heffelfinger that she was leaving. Heffelfinger stepped forward and grabbed Appellant's right wrist, but quickly released her wrist and stepped back. Seconds later, Mona Adams from the *Page 3 
Treasurer's Office knocked on the office door and simultaneously opened it. She opened the door a few inches when it hit Heffelfinger's foot. Ms. Adams stuck her head in the door and asked Heffelfinger to move her foot, which she immediately did. Ms. Adams opened the door the rest of the way and walked into the room. She asked the parties to stop yelling and for Heffelfinger to leave the Treasurer's Office.
 {¶ 6} Appellant and Heffelfinger both exited the office and went to Appellant's desk. Appellant sat at her desk and Appellant, Heffelfinger, and two other Treasurer's Office employees professionally discussed the database and mailing system. After the ten-minute discussion, Heffelfinger leaned over and hugged Appellant. Appellant hugged her back. Heffelfinger then left the Treasurer's Office.
 {¶ 7} The following Monday, Appellant and Ms. Adams met with Mr. Hamilton about what had occurred. Mr. Hamilton recommended that Appellant file a police report, but Appellant declined stating that she wanted Mr. Dropsey to take disciplinary action against Heffelfinger. Mr. Hamilton asked the other Treasurer Office employees who witnessed the incident to make written statements about their observations. In their statements, the witnesses stated that Appellant showed them bruising on her right wrist.
 {¶ 8} Richland County Commissioner Gary Utt spoke with Appellant a few days later. Commissioner Utt was acting as a go-between for the Treasurer's Office and the Auditor's Office. Appellant apparently requested that Heffelfinger's employment be terminated, but Commissioner Utt stated it was an isolated incident. Appellant spoke further with Mr. Hamilton who stated that Mr. Dropsey and Heffelfinger were accusing Appellant of lying about the incident. *Page 4 
 {¶ 9} As a result of the incident, Appellant states that she has suffered emotional stress that has caused her diabetic condition to deteriorate so that she now requires medication for treatment. She was also afraid to use the restroom at work in fear that she would run into Heffelfinger, further exacerbating her diabetes and causing kidney stones. She stated that she suffered bruising to her right wrist where Heffelfinger had grabbed it.
 {¶ 10} On July 27, 2006, Appellant filed a complaint against Heffelfinger and Defendant-Appellee, Richland County, in the Richland County Court of Common Pleas. Because her complaint included claims under 42 U.S.C. § 1983, Appellees removed Appellant's complaint to federal court. Appellant filed a motion with the federal court requesting leave to file an amended complaint, which eliminated her federal claims, and for remand. The District Court granted Appellant's motion and remanded the matter back to the Richland County Court of Common Pleas.
 {¶ 11} In Appellant's amended complaint, she alleged the following claims against Richland County: (1) civil conspiracy, (2) negligent hiring and retention, and (3) intentional infliction of emotional distress. She alleged the following against Heffelfinger: (1) assault and battery, (2) kidnapping, and (3) intentional infliction of emotional distress. Appellant sought to recovery compensatory damages, special damages, punitive damages, injunctive relief and reasonable attorney fees and costs.
 {¶ 12} Appellees filed individual motions for summary judgment against Appellant's complaint. On April 16, 2008, the Richland County Court of Common Pleas granted summary judgment in favor of Appellees on all of Appellant's claims. It is from this decision Appellant now appeals. *Page 5 
 {¶ 13} Appellant raises six Assignments of Error:
 {¶ 14} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AND DISMISSING ALL OF PLAINTIFF-APPELLANT'S CLAIMS, SUCH THAT THE JUDGMENT MUST BE REVERSED.
 {¶ 15} "II. THE TRIAL COURT ERRED IN FINDING THAT THE ACTS COMPLAINED OF BY THE PLAINTIFF-APPELLANT ARE NOT ACTIONABLE BASED UPON STATUTORY IMMUNITY SUCH THAT THE JUDGMENT MUST BE REVERSED.
 {¶ 16} "III. THE TRIAL COURT APPLIED INCORRECT STANDARDS IN DETERMINING THE ISSUES OF ASSAULT AND BATTERY.
 {¶ 17} "IV. THE TRIAL COURT APPLIED INCORRECT STANDARDS IN DETERMINING THE ISSUES OF KIDNAPPING AND FALSE IMPRISONMENT.
 {¶ 18} "V. THE TRIAL COURT IMPROPERLY ANALYZED PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
 {¶ 19} "VI. THE TRIAL COURT'S DETERMINATION OF PLAINTIFF-APPELLANT'S CLAIMS OF NEGLIGENT HIRING/RETENTION IS NOT SUPPORTED BY THE FACTS OF THIS CASE."
 {¶ 20} Appellant's six Assignments of Error address the trial court's judgment entry granting summary judgment in favor of Appellees. In the interests of clarity and judicial economy, we consolidate the summary judgment issues presented in the assigned errors and address them jointly. *Page 6 
 {¶ 21} Summary judgment motions are to be resolved in light of the dictates of Civ. R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 22} "Civ. R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 23} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 24} Appellant argues the trial court erred in its application of statutory immunity to her claims against Richland County and Heffelfinger.
 CLAIMS AGAINST RICHLAND COUNTY {¶ 25} We will first address the applicability of statutory immunity to Appellant's claims of civil conspiracy, intentional infliction of emotional distress and negligent hiring/retention against Appellee Richland County. *Page 7 
 {¶ 26} R.C. Chapter 2744 was enacted by the General Assembly to provide Ohio's political subdivisions with immunity from tort liability, with a few enumerated exceptions. Wilson v. Stark Cty. Dept. of HumanServices (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105. A county is a political subdivision under the statute. R.C. 2744.01(E). As a general rule, "[e]xcept as provided in [R.C. 2744.02](B) * * *, a political subdivision is not liable in damages in a civil action for injury * * * allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). R.C. 2744.02(B) lists five exceptions to the general grant of immunity: the negligent operation of a motor vehicle by an employee, R.C. 2744(B)(1); the negligent performance of acts by an employee with respect to a proprietary function, R.C. 2744.02(B)(2); the negligent failure to keep public roads in repair and open, R.C. 2744.02(B)(3); the negligence of employees occurring within or on the grounds of buildings used in connection with the performance of governmental functions, R.C. 2744.02(B)(4); and when civil liability is expressly imposed upon the political subdivision by statute, R.C. 2744.02(B)(5).
 {¶ 27} Upon review of Appellant's claims against Richland County, we find that the R.C. 2744.02(B) exceptions to immunity are not applicable and further, Appellant's claims of intentional infliction of emotional distress and civil conspiracy are specifically barred pursuant to R.C. 2744.02. Ohio courts have consistently held that political subdivisions are immune under R.C. 2744.02 from intentional tort claims. SeeThayer v. W. Carrollton Bd. of Edn., Montgomery App. No. 20063,2004-Ohio-3921; Terry v. Ottawa Cty. Bd. of Mental Retardation Developmental Disabilities, *Page 8 151 Ohio App.3d 234, 783 N.E.2d 959, 2002-Ohio-7299; Fabian v. Steubenville (Sept. 28, 2001), Jefferson App. No. 00 JE 33, 2001 WL 1199061; Ellithorp v.Barberton City School Dist. Bd. of Edn. (July 9, 1997), Summit App. No. 18029; Coats v. Columbus, Franklin App. No. 06AP-681, 2007-Ohio-761; andSabulsky v. Trumbull Cty., Trumbull App. No. 2001-T-0084, 2002-Ohio-7275. See also Wilson v. Stark Cty. Dept. of Human Servs.
(1994), 70 Ohio St.3d 450, 639 N.E.2d 105 ("Consequently, except as specifically provided in R.C. 2744.02(B)(1), (3), (4) and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. * * * There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress"); Hubbard v. Canton City School Bd. of Edn.,97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 8, quoting Wilson v. Stark Cty.Dept. of Human Servs. (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105
("This court has reviewed R.C. 2744.02(B)(5) in the context of intentional torts and concluded that `there are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress'"); USX v. Penn Central Corp. (2000),137 Ohio App. 3d 19, 26, 738 N.E.2d 13 ("Civil conspiracy is considered an intentional tort").
 {¶ 28} Appellant next argues that R.C. Chapter 2744 is inapplicable to an employer intentional tort under R.C. 2744.09(B). R.C. 2744.09 sets forth several exceptions that remove certain types of civil actions entirely from the purview of R.C. Chapter 2744. Williams v. McFarlandProperties, 117 Ohio App.3d, 2008-Ohio-3594, 895 N.E.2d 208, at ¶ 13. R.C. 2744.09(B) states that R.C. Chapter 2744 "does not apply to * * * [c]ivil actions by an employee * * * against his political subdivision relative *Page 9 
to any matter that arises out of the employment relationship between the employee and the political subdivision."
 {¶ 29} While Appellant's injuries arguably occurred within the scope of her employment, we agree with the majority of other appellate courts that have determined that an employer intentional tort is not excepted under R.C. 2744.09(B) from the statutory grant of immunity to political subdivisions. See Williams, supra; Terry v. Ottawa Cty. Bd. OfMRDD, 151 Ohio App.3d 234, 2002-Ohio-7299, 783 N.E.2d 959; Chase v.Brooklyn City School Dist. (2001) 141 Ohio App.3d 9, 749 N.E.2d 798;Engleman v. Cincinnati Bd. of Edn. (June 22, 2001), Hamilton App. No. C-000597; Stanley v. Miamisburg (Jan. 28, 2000), Montgomery App. No. 17912; Ventura v. Independence (May 7, 1998), Cuyahoga App. No. 72526;Ellithorp v. Barberton City School Dist. Bd. of Edn. (July 9, 1997), Summit App. No. 18029. But see, Nagel v. Horner, 162 Ohio App.3d 221,833 N.E.2d 300, 2005-Ohio-3574 and Marcum v. Rice (July 20, 1999), Franklin App. Nos. 98AP717, 98AP718, 98AP719 and 98AP721. The rationale underlying this finding is that an employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside of the scope of employment. Terry, supra;Williams, supra, citing Brady v. Safety-Kleen Corp. (1991),61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus. As stated inTerry, supra, we decline to depart from established appellate law and find that R.C. 2744.09(B) does not except an employer intentional tort from the immunity granted under the Political Subdivision Tort Liability Act.
 {¶ 30} The remaining claim against Richland County is Appellant's cause of action for negligent hiring/retention. The parties agree that this tort is excepted from *Page 10 
statutory immunity under R.C. 2744.09(B) as this claim arose from the employment relationship between Appellant and Richland County. Appellant argues in her sixth Assignment of Error the trial court erred in granting summary judgment to Richland County on this claim. We disagree.
 {¶ 31} The elements of a negligent hiring and retention claim are: (1) the existence of an employment relationship; (2) the fellow employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission which caused the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as a proximate cause of the injury. Hull v. J.C.Penney Co., Stark App. No. 2007CA00183, 2008-Ohio-1073, at ¶ 29.
 {¶ 32} The trial court determined that Appellant's claim failed as matter of law because Appellant did not provide any Civ. R. 56 evidence creating a genuine issue of fact that Heffelfinger had a propensity toward violence or aggression to render her an incompetent employee or that Richland County was aware that Heffelfinger had such a propensity prior to the incident on May 18, 2006.
 {¶ 33} We agree with the trial court's determination upon our review of the evidence presented. In Appellant's deposition, she testified that after the May 18, 2006 incident, an employee told her that Heffelfinger previously had a confrontation with another employee. (Zieber Depo., pp. 65-68). Appellant also stated that she personally witnessed Appellant yell at another employee. (Zieber Depo., p. 68). Appellant did not present any Civ. R. 56 evidence that Richland County was aware of Heffelfinger's conduct before the May 18, 2006 incident. Construing the facts in a light most favorable *Page 11 
to Appellant, we cannot find that Richland County had actual or constructive knowledge of Heffelfinger's incompetence.
 {¶ 34} In response to Defendants-Appellees' Motions for Summary Judgment, Appellant submitted her affidavit concerning the events at issue. The trial court determined that Appellant's affidavit was inconsistent with her prior deposition testimony and the affidavit did not provide an explanation for the contradictions to her prior testimony. As such, the trial court found pursuant to Byrd v.Smith, 110 Ohio St.3d 24, paragraphs one and two of the syllabus, it would not "consider those affidavit statements when evaluating whether or not genuine issues of fact exist that would preclude summary judgment." (Judgment Entry, Apr. 16, 2008). Appellant did not raise this issue as an Assignment of Error, but appears to argue it within her first Assignment of Error that the trial court erred in granting summary judgment in favor of Appellees. Upon our de novo review of this matter, we must agree with the trial court's analysis and application ofByrd, supra.
 {¶ 35} Accordingly, Appellant's Assignments of Error as they relate to the trial court's decision to grant summary judgment in favor of Richland County are overruled.
 CLAIMS AGAINST HEFFELFINGER {¶ 36} We will next address Appellant's claims against Heffelfinger. As stated above, Appellant alleged the following against Heffelfinger: (1) assault and battery, (2) kidnapping, and (3) intentional infliction of emotional distress. Heffelfinger argued in her motion for summary judgment that she was entitled to summary judgment on Appellant's claims based upon the statutory immunity granted by R.C. 2744.03(A)(6). *Page 12 
 {¶ 37} R.C. 2744.03(A)(6) is the relevant statute when dealing with immunity for political subdivision employees. It provides:
 {¶ 38} "(A) In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 39} "* * *
 {¶ 40} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or section 3746.24 [providing immunity in situations involving voluntary cleanup of contaminated property] of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 41} "(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
 {¶ 42} "(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 43} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code."
 {¶ 44} "R.C. 2744.03(A)(6) operates as a presumption of immunity."Lutz v. Hocking Technical College (May 18, 1999), Athens App. No. 98CA12, citing Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 90,658 N.E.2d 814, 820-821. It is a qualified immunity, in the sense that it will attach so long as one of the exceptions does not *Page 13 
apply. Lutz, supra. To defeat summary judgment in favor of Heffelfinger, Appellant was required to present evidence tending to show a material issue of fact as to one of the exceptions to qualified immunity,e.g., Heffelfinger's act was beyond the scope of employment or was performed with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 45} The trial court determined there was no genuine issue of material fact as to whether Heffelfinger acted beyond the scope of her employment or whether she acted with malicious purpose, in bad faith, or in a wanton and reckless manner. We will address each of Appellant's claims against Heffelfinger under our de novo review to determine the applicability of R.C. 2744.03(A)(6).
 {¶ 46} Appellant argues in her third Assignment of Error the trial court erred in its determination of Appellant's claim of assault and battery against Heffelfinger. We agree in part.
 {¶ 47} A cause of action for civil assault involves "the `intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact.'" Hopkins v. Columbus Bd. Of Educ., Franklin App. No. 07AP-700,2008-Ohio-1515, ¶ 29 citing Batchelder v. Young, Trumball App. No. 2005-T-0150, 2006-Ohio-6097. A cause of action for battery "involves the `intentional, unconsented, contact with another.'" Id. Appellant's claim for assault and battery is based upon the heated exchange that occurred in the office culminating in Heffelfinger grabbing Appellant's wrist with enough pressure to leave a bruise.
 {¶ 48} We first find the trial court was correct in its determination that the Civ. R. 56 evidence presented did not demonstrate any genuine issue of material fact that *Page 14 
Heffelfinger's actions were done with malicious purpose, in bad faith, or in a wanton and reckless manner. "Wanton misconduct" has been defined as a failure to exercise any care whatsoever. Jackson v. McDonald
(2001), 144 Ohio App.3d 301, 309, 760 N.E.2d 24 citing Hawkins v.Ivy (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. In Roszman v. Sammett (1971), 26 Ohio St.2d 94, 96-97, 55 O.O.2d 165,166, 269 N.E.2d 420, 422, the Ohio Supreme Court stated that "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tort-feasor." The perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury.Id. at 97, 55 O.O.2d at 166, 269 N.E.2d at 423. To act in reckless disregard of the safety of others, the conduct must be of such risk that it is substantially greater than that which is necessary to make the conduct negligent. Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104,559 N.E.2d 705, 708.
 {¶ 49} "Bad faith" has been defined as a "`dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'"Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991), 76 Ohio App.3d 448,454, 602 N.E.2d 363, 367, quoting Slater v. Motorists Mut. Ins. Co.
(1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus. "Malice" has been defined as "willful and intentional design to do injury." Id., 76 Ohio App.3d at 453-454, 602 N.E.2d at 367.
 {¶ 50} However, examination of the issue of whether the intentional tort of assault and battery is within the scope of employment yields a different result. In determining whether an employee's act is within the scope of employment, the Ohio *Page 15 
Supreme Court set the following rationale in Byrd v. Faber (1991),57 Ohio St.3d 56, 58, 565 N.E.2d 584:
 {¶ 51} "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, as in the case at bar, the behavior giving rise to the tort must be `calculated to facilitate or promote the business for which the servant was employed * * *.' Little Miami RR. Co.v. Wetmore (1869), 19 Ohio St. 110, 132; Taylor v. Doctor's Hosp.
(1985), 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249. For example, an employer might be liable for an intentional tort if an employee injures a patron when removing her from the employer's business premises or blocking her entry. The removal of patrons, who may be unruly, underage, or otherwise ineligible to enter, is calculated to facilitate the peaceful and lawful operation of the business. Consequently, an employer might be liable for an injury inflicted by an employee in the course of removal of a patron. See, e.g., Stewart v. Napuche (1952), 334 Mich. 76,53 N.W.2d 676; Kent v. Bradley (Tex.Civ.App. 1972), 480 S.W.2d 55.
 {¶ 52} "However, the employer would not be liable if an employee physically assaulted a patron without provocation. As we held inVrabel v. Acri (1952), 156 Ohio St. 467, 474, 46 O.O. 387, 390,103 N.E.2d 564, 568, `an intentional and willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.' See, also,Schulman v. Cleveland (1972), 30 Ohio St.2d 196, 59 O.O.2d 196,283 N.E.2d 175. In other words, an employer is not liable for *Page 16 
independent self-serving acts of his employees which in no way facilitate or promote his business."
 {¶ 53} Construing the Civ. R. 56 evidence most favorably to Appellant, we hold that there is genuine issue of material fact that Heffelfinger's action of grabbing Appellant's wrist with enough force to leave a bruise was not within the scope of Heffelfinger's employment as a Chief Deputy Auditor. While the discussion between Heffelfinger and Appellant regarding the database system was calculated to facilitate or promote the business for which the servant was employed, when Heffelfinger grabbed Appellant's wrist to prevent her from leaving the discussion, her act creates a genuine issue of material fact whether Heffelfinger was acting outside the scope of employment.
 {¶ 54} The Ohio Supreme Court has made a similar determination regarding the exception to the qualified immunity of a public employee. In order to determine for purposes of governmental immunity whether an attorney for the City of Cleveland was acting within the scope of his employment when he physically assaulted his opposing counsel, the Ohio Supreme Court stated,
 {¶ 55} "We are unable to discern any grant of authority in either the Revised Code or the Cleveland Municipal Charter which allows an assistant law director to gratify his personal resentments, either in the form of a physical assault or a lawsuit arising therefrom, while engaged in the execution of his appointed tasks." Schulman v. City ofCleveland (1972), 30 Ohio St.2d 196, 197, 283 N.E.2d 175.
 {¶ 56} We find Appellant has presented evidence tending to show a material issue of fact as to an exception to qualified immunity under R.C. 2744.03(A)(6)(a) to defeat summary judgment on this issue. Further, we find this same evidence *Page 17 
demonstrates a genuine issue of material fact as to Appellant's claim for battery. Considering the evidence is a light most favorable to Appellant, we find that Heffelfinger's act of grabbing Appellant's wrist could be construed as an intentional, unconsented touching of another. We note the trial court reached the same determination on Appellant's claim for battery and would have denied summary judgment on that claim, but for its application of qualified immunity to Heffelfinger.
 {¶ 57} The evidence in this matter, however, does not lend the same credence to Appellant's claim for assault. There was no evidence presented that Heffelfinger intentionally offered or attempted, without authority or consent, to harm or offensively touch Appellant to reasonably place Appellant in fear of such contact. In Appellant's deposition, counsel asked Appellant what Appellant said to her when they were alone in the office. Appellant responded, "It's kind of hard to remember everything she said because she was talking so loud. So I would say that she said I didn't understand their side would be one of them. I don't know. Mostly it was that, and then she would talk over top of me when I would try to explain." (Zieber Depo., p. 35). Counsel cross-examined Appellant regarding the moments when Heffelfinger grabbed Appellant's wrist.
 {¶ 58} "A. She moved forward one time that I can remember and that was to grab my wrist.
 {¶ 59} "Q. And you are saying she moved forward to you or you stepped towards her and the door?
 {¶ 60} "A. No. She grabbed me first before I stepped forward.
 {¶ 61} "Q. And that was precipitated by you simply saying I'm leaving now? *Page 18 
 {¶ 62} "A. I would think so, yes. * * *." (Zieber Depo., p. 26).
 {¶ 63} Appellant testified that other than Heffelfinger grabbing her wrist, there was no other contact between her and Heffelfinger during the time they were in the office alone. (Zieber Depo., p. 27).
 {¶ 64} Accordingly, Appellant's first, second and third Assignments of Error are sustained in part and overruled in part.
 {¶ 65} Appellant's fourth Assignment of Error argues the trial court incorrectly determined Heffelfinger was entitled to judgment as a matter of law on Appellant's claim of kidnapping, which the trial court restyled as false imprisonment.
 {¶ 66} False imprisonment occurs when a person confines another intentionally without privilege and against her consent within a limited area for any appreciable time, however short. Bennett v. Ohio Dept. ofRehab. Corr. (1991), 60 Ohio St.3d 107, 109, 573 N.E.2d 633. When an individual voluntarily agrees to be in a certain place, however, that individual is not confined since she is not held against her will.Sharp v. Cleveland Clinic, 176 Ohio App.3d 226, 2008-Ohio-1777,891 N.E.2d 809, at ¶ 23 citing Denovich v. Twin Valu Stores, Inc. (Feb. 23, 1995), Cuyahoga App. Nos. 67580 and 67922.
 {¶ 67} As a first matter, we must determine whether Appellant has presented genuine issues of material fact to overcome Heffelfinger's presumption of immunity pursuant to R.C. 2744.03(A)(6). Appellant does not dispute that she voluntarily went into the private office with Heffelfinger. Appellant argues that the false imprisonment occurred when Heffelfinger stood in front of the door and placed her foot in front of the door. Using the analysis stated above regarding R.C. 2744.03(A)(6), we cannot find by *Page 19 
construing these facts most favorably to Appellant that Appellant has defeated the presumption of Heffelfinger's immunity. First, Appellant went into the room voluntarily. Second, the location of Heffelfinger in the room does not demonstrate Heffelfinger's action was outside the scope of employment or that she acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellant testified that she could not say that Heffelfinger was standing in a position to prevent anyone from entering the door. (Zieber Depo., p. 51). Third, Appellant testified, as corroborated by Ms. Adams, that when Ms. Adams attempted to open the door and could not because of the placement of Heffelfinger's foot, Heffelfinger immediately moved her foot so that Ms. Adams could fully open the door and enter the room. (Zieber Depo., pp. 50-52, Adams Depo., 25-26).
 {¶ 68} Appellant also argues that Heffelfinger's grabbing of Appellant's wrist could be construed as imprisonment for purposes of the false imprisonment claim. We disagree with this argument because Appellant testified that as soon as Heffelfinger grabbed her wrist, Heffelfinger immediately let go. While the contact may be sufficient to constitute an unconsented and offensive touch for purposes of battery, we cannot find the grabbing of the wrist and immediate release to create a genuine issue of material fact for purposes of false imprisonment. Construing the facts most favorably to Appellant, we cannot find a genuine issue of material fact to overcome the presumption of immunity pursuant to R.C. 2744.03(A)(6). Assuming arguendo the facts were such that Appellant met her burden under R.C. 2744.03(A)(6), we find there exist no genuine issues of material fact as to her claim for false imprisonment.
 {¶ 69} Appellant's fourth Assignment of Error is therefore overruled. *Page 20 
 {¶ 70} Appellant argues in her fifth Assignment of Error the trial court incorrectly analyzed Appellant's claim of intentional infliction of emotional distress. We disagree. This Court discussed the standard for demonstrating a claim for intentional infliction of emotional distress in Hull v. J.C. Penney, supra. We stated:
 {¶ 71} "The court correctly cited the seminal case of Yeager v. LocalUnion 20 (1983), 6 Ohio St.3d 369. In Yeager, the Supreme Court found one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for damages due to the emotional distress. The Supreme Court warned it is insufficient that the tortfeasor acted with tortious, or even criminal, intent. It is insufficient to show malice, or a degree of aggravation which would entitle a plaintiff to punitive damages for other torts. Liability for intentional infliction of emotional distress requires conduct so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, which would be regarded as atrocious and utterly impossible in a civilized community, Yeager at 374-375." Id. at ¶ 26.
 {¶ 72} The trial court did not err in finding no disputed facts as to whether Heffelfinger acted with malicious purpose, in bad faith, or in a wanton or reckless manner for the purposes of Appellant's claim for intentional infliction of emotional distress. The Civ. R. 56 evidence does not rise to the level of a conscious disregard of the fact that her conduct would in all probability result in injury. The next determination is whether Appellant has established a genuine issue of material fact that Heffelfinger's alleged intentional infliction of emotional distress was outside the scope of employment.
 {¶ 73} Upon review of the record and construing the facts most favorably to Appellant, we cannot find that Heffelfinger's interactions with Appellant on May 18, *Page 21 
2006, and thereafter, remove Heffelfinger from her scope of employment in regards to this specific claim. We further find that even if Appellant overcame the presumption of immunity, her claim for intentional infliction of emotional distress would not survive summary judgment. We agree with the trial court that Heffelfinger's actions towards Appellant were not so outrageous in character and extreme degree as to go beyond all possible bounds of decency and to be regarded by a civilized community as atrocious. Appellant's fifth Assignment of Error is overruled.
 {¶ 74} Accordingly, pursuant to our above analysis, we hereby overrule in part and sustain in part Appellant's first, second and third Assignments of Error. We overrule Appellant's fourth, fifth and sixth Assignments of Error in their totality.
 {¶ 75} The judgment of the Richland County Court is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this decision and judgment entry. By: Delaney, J. Hoffman, P.J. and Wise, J. concur. *Page 22 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed in part, reversed in part and remanded for further proceedings consistent with this decision and judgment entry. Costs are to be split between Appellant and Appellees. *Page 1