VACHA, APPELLEE, *v*. THE CITY OF NORTH RIDGEVILLE,

APPELLANT, ET AL.

[Cite as *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020.]

*Political-subdivision immunity—Employer intentional tort—R.C. 2744.09(B)*
*exception to political-subdivision immunity from tort liability may apply to*
*employer-intentional-tort claim by a political subdivision's employee.*

(Nos. 2011-1050 and 2011-1327—Submitted February 26, 2013—Decided

July 17, 2013.)

APPEAL from and CERTIFIED by the Court of Appeals for Lorain County,

No. 10CA009750, 2011-Ohio-2446.

_____

FRENCH, J.

{¶ 1} This certified-conflict and discretionary appeal presents the following two issues: (1) whether R.C. 2744.09(B), an exception to political-subdivision immunity from tort liability, applies to employer-intentional-tort claims by a political subdivision's employee and (2) whether appellant, the city of North Ridgeville, was entitled to summary judgment on its former employee's employer-intentional-tort claim, based on political-subdivision immunity. Consistent with *Sampson v. Cuyahoga Metro. Hous. Auth.,* 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, we hold that R.C. 2744.09(B) may apply to an employer-intentional-tort claim by a political subdivision's employee, and we hold that North Ridgeville was not entitled to summary judgment on the intentional-tort claim brought by appellee, Lisa Vacha, here. Accordingly, we affirm the court of appeals' judgment.

*Facts and Procedural History*

{¶ 2} In March 2000, North Ridgeville hired Vacha as a helper in its French Creek Wastewater Treatment Plant. As a helper, Vacha's duties included

basic plant maintenance and water testing.   North Ridgeville later promoted Vacha to the position of unlicensed operator.   An unlicensed operator has the same duties as a helper but is also responsible for meter readings.

{¶ 3}   In 2004, North Ridgeville posted a job opening for another helper at the French Creek plant.  The North Ridgeville mayor, G. David Gillock, asked Charles Ralston to apply for the helper position at the French Creek plant and asked the plant superintendent, Donald Daley, to grant Ralston an interview. Ralston, the father of two of Mayor Gillock's grandchildren, was unemployed and in arrears with his child support.  Mayor Gillock had known Ralston for about eight years and was aware that his daughter had twice called the police on Ralston for domestic violence.  The mayor did not, however, know that Ralston had a criminal record.

{¶ 4}   Ralston applied for the helper position at the French Creek plant. North Ridgeville inquires about felonies on its employment application, but it does not conduct a criminal-background check before hiring an employee unless the position requires security or leadership.   In his employment application, Ralston truthfully answered that he did not have a felony record.  Between 1994 and 1999, however, Ralston was convicted of misdemeanor domestic violence, assault, and disorderly conduct.   Daley interviewed Ralston, but did not ask whether Ralston had a criminal record.   Daley was pleased with Ralston's interview, and North Ridgeville hired him for the helper position.

{¶ 5}   Ralston worked at the French Creek plant from March 2004 to June 2, 2006.   During Ralston's employment at the plant, Vacha worked as an unlicensed operator.  At some point, Vacha and Ralston had a verbal altercation after Vacha complained about Ralston's wife driving onto the plant grounds. After that altercation, however, Vacha and Ralston worked together without incident (until the event underlying this case) and occasionally socialized outside of work.  Vacha occasionally drove Ralston to work.  From January 2006 to June

2, 2006, Vacha and Ralston worked the 4:00 p.m. to 2:00 a.m. shift together, generally alone and unsupervised.

{¶ 6} On June 2, 2006, Vacha picked Ralston up and drove him to the plant for the night shift. During their shift, Vacha permitted Ralston to drive her truck to purchase beer. After returning to the plant, Ralston raped and assaulted Vacha. Vacha fled the plant on foot and reported the rape to the police. Ralston was convicted of rape and sentenced to prison.

{¶ 7} In June 2008, Vacha filed this action against Ralston and North Ridgeville in the Lorain County Court of Common Pleas. In her amended complaint, Vacha brought claims against Ralston for damages resulting from the assault and rape and for intentional infliction of emotional distress. Vacha alleged the following four claims for relief against North Ridgeville: (1) negligent hiring and supervising of Ralston, (2) vicarious liability for Ralston's actions, (3) reckless hiring and supervision of Ralston, and (4) intentional, willful, and wanton disregard of the safety of others in selecting, supervising, and controlling Ralston—an employer intentional tort.

{¶ 8} North Ridgeville moved for summary judgment, claiming immunity from tort liability under R.C. Chapters 2744 and 4123. The trial court granted summary judgment in North Ridgeville's favor on Vacha's vicarious-liability claim, but denied the city's motion for summary judgment on Vacha's intentional-tort claim and her claims for negligent and reckless hiring and supervision. North Ridgeville appealed pursuant to R.C. 2744.02(C), which provides that an order denying a political subdivision the benefit of an alleged immunity from liability is a final order.

{¶ 9} The Ninth District Court of Appeals held that Ohio workers' compensation law, R.C. Chapter 4123, precluded recovery on Vacha's claims for negligent and reckless hiring and supervision, and it reversed the trial court's denial of summary judgment on those claims. On the other hand, the court of

appeals affirmed the denial of North Ridgeville's motion for summary judgment on Vacha's employer-intentional-tort claim. The court held that because an intentional tort may arise out of the employment relationship between a political subdivision and its employee, North Ridgeville did not establish that it was entitled to immunity as a matter of law on that claim. *Id.* at ¶ 22-23.

{¶ 10} The court of appeals certified that its decision conflicts with *Zieber v. Heffelfinger*, 5th Dist. Richland No. 08CA0042, 2009-Ohio-1227; *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, 895 N.E.2d 208 (12th Dist.); *Coats v. Columbus,* 10th Dist. Franklin No. 06AP-681, 2007-Ohio-761; and *Villa v. Elmore*, 6th Dist. Lucas No. L-05-1058, 2005-Ohio-6649. We agreed that a conflict exists and also accepted jurisdiction over North Ridgeville's discretionary appeal regarding Vacha's intentional-tort claim. *Vacha v. N. Ridgeville,* 129 Ohio St.3d 1487, 2011-Ohio-5129, 954 N.E.2d 661; 129 Ohio St.3d 1488, 2011-Ohio-5129, 954 N.E.2d 661. We consolidated the appeals and held them for *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247. *Id.* Following our decision in *Sampson*, we sua sponte ordered the parties to brief the certified-conflict question: "Does R.C. 2744.09 create an exception to Political Subdivision Immunity for intentional tort claims alleged by a public employee?" *Vacha v. N. Ridgeville*, 131 Ohio St.3d 1537, 2012-Ohio-2025, 966 N.E.2d 892.

*Analysis*

{¶ 11} This appeal concerns only Vacha's employer-intentional-tort claim, in which she alleged that North Ridgeville "acted intentionally with willful, wanton disregard for the safety of others, in selecting, supervising or otherwise controlling" Ralston. To recover for an employer intentional tort, an injured employee must prove that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." R.C. 2745.01(A). As used in that statute, " 'substantially certain'

4

means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death."  R.C. 2745.01(B).

{¶ 12} North Ridgeville argued that it was entitled to summary judgment on Vacha's intentional-tort claim because it was immune from liability under R.C. Chapter 2744.  The Ohio Political Subdivision Tort Liability Act, R.C. Chapter 2744, provides that political subdivisions are generally immune from liability for damages in civil actions: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  R.C. 2744.02(A)(1).  North Ridgeville is a political subdivision for purposes of the act, and none of the exceptions in R.C. 2744.02(B) apply.  The Political Subdivision Tort Liability Act, however, does not apply to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that *arises out of the employment relationship* between the employee and the political subdivision."  (Emphasis added.)  R.C. 2744.09(B). The purpose of R.C. 2744.09(B) is to protect public employees by allowing them to recover against their employers, who would otherwise be entitled to immunity under R.C. Chapter 2744.  *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, at ¶ 13.

{¶ 13} North Ridgeville's entitlement to immunity on Vacha's employer-intentional-tort claim depends upon the applicability of R.C. 2744.09(B).  In its motion for summary judgment, North Ridgeville argued that intentional torts do not arise out of the employment relationship between a political subdivision and its employee and that political-subdivision immunity therefore applies.  The court of appeals, however, held that Vacha's intentional-tort claim "may constitute a claim within the scope of R.C. 2744.09(B)" and found that North Ridgeville did

not establish that it was entitled to immunity as a matter of law. 2011-Ohio-2446 at ¶ 23.

{¶ 14} After the court of appeals issued its decision in this case, we addressed the applicability of R.C. 2744.09(B) to employer-intentional-tort claims by public employees in *Sampson*. Like this case, *Sampson* stemmed from a denial of a political subdivision's motion for summary judgment.

{¶ 15} In *Sampson*, a plumber employed by the Cuyahoga Metropolitan Housing Authority ("CMHA") sued CMHA for various intentional-tort and negligence claims. *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, at ¶ 2, 6. Sampson's claims arose from his arrest by CMHA, during work hours and on CMHA property, for felony theft in office and misuse of CMHA credit cards. *Id.* at ¶ 2-4, 6. CMHA terminated Sampson's employment after a grand jury indicted him. *Id.* at ¶ 4. After failing to subpoena a witness from the credit-card company, the county prosecutor dismissed the charges against Sampson prior to trial, with prejudice. *Id.* Following arbitration on a grievance filed by Sampson, CMHA reinstated Sampson to his former position with back wages, benefits, and seniority, but Sampson resigned, finding the atmosphere intolerable upon his return to work. *Id.* at ¶ 5.

{¶ 16} CMHA claimed immunity from liability under R.C. Chapter 2744 on all of Sampson's claims. *Id.* at ¶ 6. With respect to Sampson's intentional-tort claims, CMHA relied on a principle from workers' compensation law, set forth in *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), that intentional torts necessarily occur outside of, and cannot arise from, the employment relationship. *Sampson* at ¶ 12. Based on that principle, CMHA argued that R.C. 2744.09(B) did not strip it of an immunity defense. *Id.* Sampson responded that his claims, including his intentional-tort claims, arose out of his employment relationship with CMHA and that R.C. 2744.09(B) therefore

precluded CMHA's assertion of political-subdivision immunity. *Sampson* at ¶ 10-11.

{¶ 17} Noting the differences between the policies underlying political-subdivision-tort immunity and workers' compensation, we refused to incorporate the *Blankenship* rationale into the political-subdivision-immunity context. *Sampson* at ¶ 16. We held:

> 1. When an employee of a political subdivision brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a "matter that arises out of the employment relationship" within the meaning of R.C. 2744.09(B).
>
> 2. An employee's action against his or her political-subdivision employer arises out of the employment relationship between the employee and the political subdivision within the meaning of R.C. 2744.09(B) if there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship.

*Id.* at paragraphs one and two of the syllabus. *Sampson* thus clarified that some, but not all, employer-intentional-tort claims against a political subdivision qualify as civil actions "relative to any matter that arises out of the employment relationship," within the meaning of R.C. 2744.09(B).

{¶ 18} The court of appeals' decision in this case predated *Sampson*, but it closely parallels the *Sampson* holding. The court of appeals noted that in *Buck v. Reminderville*, 9th Dist. Summit No. 25272, 2010-Ohio-6497, it had recently overruled its opinion in *Ellithorp v. Barberton City School Dist. Bd. of Edn.*, 9th Dist. Summit No. 18029, 1997 WL 416333 (July 9, 1997), a case that North Ridgeville cited in its motion for summary judgment. In *Buck*, at ¶ 10, quoting

R.C. 2744.09(B), the court of appeals held that "a claim by the employee of a political subdivision against the political subdivision for its intentionally tortious conduct may constitute a 'civil action[] * * * relative to any matter that arises out of the employment relationship between the employee and the political subdivision' under [R.C.] 2744.09(B)." This court summarily affirmed *Buck* on the authority of *Sampson*. *Buck v. Reminderville*, 132 Ohio St.3d 24, 2012-Ohio-1580, 967 N.E.2d 1218. Based on *Buck*, and consistent with our subsequent opinion in *Sampson*, the court of appeals held that the trial court did not err in denying North Ridgeville's motion for summary judgment, because "Vacha's employer intentional tort claim may constitute a claim within the scope of R.C. 2744.09(B)." 2011-Ohio-2446 at ¶ 23.

{¶ 19} *Sampson*, which we reaffirm today, answers the certified-conflict question in this case; "When an employee of a political subdivision brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a 'matter that arises out of the employment relationship' within the meaning of R.C. 2744.09(B)." *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, at paragraph one of the syllabus. But the answer to the certified-conflict question is not dispositive of the discretionary appeal. As in *Sampson*, the determination that an employer-intentional-tort claim may implicate the R.C. 2744.09(B) exception to political-subdivision-tort immunity does not answer whether that statute applies in a particular case. That determination requires a court to consider whether "there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship." *Sampson* at paragraph two of the syllabus. Because the order on appeal was a denial of a motion for summary judgment, we review the matter de novo, governed by the standards in Civ.R. 56. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

**{¶ 20}** In *Sampson*, the court of appeals considered the evidence presented and held that Sampson's claims clearly arose out of his employment relationship with CMHA, and we agreed. *Id.* at ¶ 18. We concluded that reasonable minds could find that Sampson's claims arose out of his employment relationship with CMHA and that they were, therefore, excepted from immunity under R.C. 2744.09(B). *Id.* at ¶ 19, 22.

**{¶ 21}** To resolve the discretionary appeal here, *Sampson* requires consideration of whether there is a causal connection or causal relationship between Vacha's intentional-tort claim and her employment relationship. If there is, then Vacha's claim arises out of the employment relationship and the city may not claim political-subdivision immunity. If, on the other hand, there is no causal connection or causal relationship, then the city may be entitled to immunity under R.C. Chapter 2744.

**{¶ 22}** To determine whether there is a causal connection or a causal relationship between Vacha's intentional-tort claim and her employment relationship with North Ridgeville, we must look to the factual basis for Vacha's claim. North Ridgeville argues that Ralston's criminal acts are unrelated to Vacha's employment relationship with the city, and this may be true, but Vacha's intentional-tort claim is not based on the rape and assault she suffered. Vacha pleaded a separate claim to impose vicarious liability upon North Ridgeville for Ralston's criminal acts, but that claim is not before this court. Rather, Vacha alleged intentional misconduct by the city in its selection, supervision, and control of Ralston. It is a causal connection or causal relationship between that alleged conduct and Vacha's employment relationship that governs the applicability of R.C. 2744.09(B) here.

**{¶ 23}** This case does not present the clear causal relationship present in *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, where CMHA had its employee arrested during work hours, on work grounds, and for alleged

misconduct in his job duties. A plaintiff need only establish a genuine issue of material fact as to whether the plaintiff's claims are causally related or causally connected to the employment relationship to survive summary judgment. *Sampson* at ¶ 19, 22. Here, unlike in *Sampson*, neither the trial court nor the court of appeals has finally resolved the immunity question in this case. The trial court did not mention political-subdivision immunity, but simply held that there were genuine issues of material fact as to whether North Ridgeville committed an intentional tort. The court of appeals addressed North Ridgeville's summary-judgment argument regarding immunity on Vacha's intentional-tort claim: "The city maintained that, as a matter of law, the 'civil actions' that are within the scope of R.C. 2744.09(B) do not include employer intentional torts." 2011-Ohio-2446 at ¶ 20. The court of appeals simply held that North Ridgeville did not establish entitlement to immunity as a matter of law. *Id.* at ¶ 23. The court did not, however, examine the evidence to determine whether a causal connection or causal relationship exists under the facts of this case.

{¶ 24} *Sampson* demands affirmance of the denial of North Ridgeville's motion for summary judgment on Vacha's employer-intentional-tort claim. The court of appeals appropriately rejected North Ridgeville's argument that R.C. 2744.09(B) never applies to intentional-tort claims and correctly held that Vacha's employer-intentional-tort claim may constitute a claim within the scope of R.C. 2744.09(B). Neither the trial court nor the court of appeals, however, considered whether the particular evidence in this case established a genuine issue of material fact as to whether there is a causal connection or a causal relationship between North Ridgeville's selection, supervision, and control of Ralston, and Vacha's employment relationship with the city. We decline to make that determination in the first instance.

{¶ 25} According to North Ridgeville, Vacha argues that merely alleging an intentional tort satisfies the causal-connection requirement. Regardless of

whether that is an accurate characterization of Vacha's argument, our affirmance of the court of appeals' judgment does not constitute a holding that mere allegations of a causal relationship are sufficient to preclude a political subdivision's assertion of immunity under R.C. Chapter 2744. If, however, there is a genuine issue of material fact as to whether a plaintiff's claim is causally related or connected to the plaintiff's employment relationship, a political subdivision will not be entitled to summary judgment on the basis of political-subdivision immunity. That is not to suggest that a political subdivision cannot ultimately demonstrate the absence of the required connection and its entitlement to immunity upon a full presentation of the evidence, despite an earlier denial of summary judgment. Nor do we suggest that there is no such thing as an employer-intentional-tort claim that so clearly lacks a causal relationship or causal connection that it falls outside the scope of R.C. 2744.09(B) as a matter of law. For example, were Vacha's intentional-tort claim against North Ridgeville based solely on Ralston's criminal conduct, and not upon alleged intentional misconduct by the city itself, there might be an argument that her claim would fall outside the scope of R.C. 2744.09(B) as a matter of law. That is not, however, the claim that Vacha asserts.

*Conclusion*

{¶ 26} In conclusion, we answer the certified-conflict question by reaffirming our holding in *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, that a civil action by an employee of a political subdivision alleging an intentional tort against his or her employer may fall within the R.C. 2744.09(B) exception to political-subdivision immunity. We further affirm the judgment of the court of appeals in this case because North Ridgeville did not establish that it is entitled to political-subdivision immunity on Vacha's employer-intentional-tort claim as a matter of law.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and O'NEILL, JJ., concur.

O'DONNELL and KENNEDY, JJ., concur in part and dissent in part.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 27} I reluctantly agree that it might be *possible* under *Sampson v. Cuyahoga Metro Hous. Auth.,* 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, for Lisa Vacha to show that her intentional-tort claim is causally related to her employment relationship with the city, which would mean that the exception to political-subdivision immunity under R.C. 2744.09(B) is applicable. However, even if there is a causal connection and immunity does not apply, Vacha will have to prove her intentional-tort claim against the city. Remanding this cause to determine whether immunity applies is a vain act because there is no evidence that the city acted with deliberate intent to harm Vacha. For that reason, I would dismiss her complaint for failing to establish a claim upon which relief can be granted. Therefore, I respectfully concur in part and dissent in part.

{¶ 28} In the city's appeal from the trial court's denial of its motion for summary judgment, the city argued that R.C. 2745.01, the employer-intentional-tort statute, should be applied in determining whether Vacha had established an employer-intentional-tort claim. The court of appeals declined to apply R.C. 2745.01 because the city had not mentioned that statute in its motion for summary judgment. 2011-Ohio-2446 at ¶ 17. Instead, the court of appeals affirmed the trial court's holding that there was a genuine issue of material fact as to whether the city had committed an intentional tort under *Fyffe v. Jeno's Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991), reasoning that the trial court had had no authority to grant summary judgment on a ground that the city had failed to raise. 2011-Ohio-2446 at ¶ 15, 17.

{¶ 29} *Fyffe* espoused a common-law rule whereby an employee could recover in an employer-intentional-tort case if the employee demonstrated that the

employer had knowledge of a dangerous working condition and yet required the employee to perform his or her work anyway, knowing with substantial certainty that the employee would be harmed. *Fyffe* at paragraphs one and two of the syllabus. *Fyffe* required a plaintiff to prove that the employer knew that injuries to employees were " 'certain or *substantially certain* to result.' " (Emphasis added.) *Englund v. Wendy's Internatl., Inc*., 6th Dist. Lucas No. L-95-229, 1996 WL 199167, * 3 (Apr. 26, 1996), quoting *Fyffe* at paragraph two of the syllabus.

{¶ 30} In 2005, the General Assembly codified the requirements for employer-intentional-tort claims in R.C. 2745.01. By enacting R.C. 2745.01, the General Assembly intended to " 'significantly curtail an employee's access to common-law damages for what we will call a "substantially certain" employer intentional tort.' " *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 23, quoting *Stetter v. R.J. Corman Derailment Servs., L.L.C*., 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 27. R.C. 2745.01 " 'permit[s] recovery for employer intentional torts only when an employer acts with specific intent to cause injury.' " *Id*. at ¶ 23, quoting *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56. Accordingly, "absent a *deliberate* intent to injure another, an employer is not liable for a claim alleging an employer intentional tort." (Emphasis added.) *Id*. at ¶ 25.

{¶ 31} To the extent that *Fyffe* espouses a "substantially certain" employer intentional tort, it is no longer good law. Applying the common-law definition of intentional tort espoused in *Fyffe* will create a substantial injustice to the city by providing Vacha with a lower threshold of proof than is required by R.C. 2745.01. Therefore, I would apply R.C. 2745.01 as interpreted in *Houdek* and require that Vacha prove that the city acted with deliberate intent to injure her.

**{¶ 32}** David Gillock, the mayor of North Ridgeville, told Ralston about the entry-level job opening for a helper at the French Creek water-treatment plant. Gillock asked Don Daley, the superintendent of the plant, to interview Ralston for the position. At the time, the mayor was aware that his daughter had called the police on Ralston twice for domestic violence, but in his deposition, he testified that she had not pressed charges regarding either incident. The city's employment application asked, "Since your 18th birthday, have you ever pled guilty to, or been found guilty of any offense other than minor traffic offenses." Daley admitted that when he interviewed Ralston, he did not ask him whether he had a criminal record. The city did not conduct background checks for entry-level positions.

**{¶ 33}** Although it may be prudent for an employer to conduct a criminal-background check for all employment applicants, it is not required by law. *Rozzi v. Star Personnel Servs., Inc.,* 12th Dist. Butler No. CA2006-07-162, 2007-Ohio-2555, ¶ 11. Nevertheless, the discovery of a job applicant's violent criminal history could make it foreseeable to the employer that the employee has a propensity for violence, and if the applicant is hired anyway and then injures someone while on the job, the victim may have grounds to support a negligent-hiring claim. *Id.* at ¶ 13.

**{¶ 34}** When the city hired Charles Ralston, he had no felony convictions, but he did have several misdemeanor convictions for domestic violence and one for assault. While this evidence, combined with the mayor's knowledge of Ralston's history, might be sufficient to raise a genuine issue of material fact as to whether Ralston had a propensity for violence that the city knew or should have known about, possibly supporting a claim against the city for negligent, or maybe even reckless, hiring and/or supervision (claims that are barred by workers' compensation law), I would hold that it is insufficient as a matter of law to support a claim that the city acted with *deliberate intent* to injure Vacha. *Houdek,*

134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, at ¶ 29. Consequently, remanding this case for consideration whether immunity applies is a vain act. *See State ex rel. Kinnear Div., Harsco Corp. v. Indus. Comm.*, 77 Ohio St.3d 258, 263, 673 N.E.2d 1290 (1997). I would dismiss Vacha's intentional-tort claim against the city.

{¶ 35} Accordingly, I respectfully concur in part and dissent in part.

O'DONNELL, J., concurs in the foregoing opinion.

_____

John P. Hildebrand Co., L.P.A., and John Hildebrand Sr., for appellee.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, James A. Climer, and Frank H. Scialdone, for appellant.

Ice Miller, L.L.P., Stephen L. Byron, Stephen J. Smith, and Chris W. Michael; and John Gotherman, urging reversal for amicus curiae Ohio Municipal League.

Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae Ohio Association for Justice.

_____